UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

GREGORY WILLIS, ET AL                    CIVIL ACTION NO. 12-cv-2069

VERSUS                                   JUDGE STAGG

BRUCE WILLIAMSON, ET AL                  MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Plaintiffs are nine current or former employees of Cleco Corporation who have alleged, in other suits pending before this court, that Cleco engaged in employment discrimination based on race. They join together in this new civil action. It is based solely on an offer proposed by Bruce Williamson, Cleco's president and CEO, to settle the original suits for several thousand dollars paid to each plaintiff.

Plaintiffs contend that the settlement offer was unlawful retaliation, created a hostile work environment, and intentionally inflicted severe emotional distress. They name as defendants both Cleco and Mr. Williamson. Before the court is the Defendants' Motion to Dismiss (Doc. 4) on the grounds that the complaint, as amended, does not state a claim on which relief may be granted. For the reasons that follow, it is recommended that the motion be granted.

**Rule 12(b)(6)**

A defendant may challenge a complaint by filing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In assessing the motion, the court must accept as true all well-pleaded facts in the complaint and view those facts in the light most favorable to the plaintiff. In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007).

**The Allegations**

Several plaintiffs joined in a civil action, 09-cv-2103, in which they asserted a number of employment discrimination claims against Cleco. The claims include hostile work environment based on race, failure to promote, and similar claims. The single action was later severed into 11 separate suits. See 09-cv-2103, Doc. 115. Plaintiffs in this case are plaintiffs in those original suits, which remain pending.

Mr. Williamson, acting as president and CEO of Cleco, wrote a letter to each of the Plaintiffs. Each letter, dated December 21, 2011, was addressed to the current or former employee, in care of an attorney who represents Plaintiffs in the original discrimination suits and this action. Each letter provided as follows:

> In the spirit of the Christmas season, as the new President and Chief Executive Officer of Cleco, I am extending you an individual offer to settle all claims outstanding, including attorney's fees, for the sum of $10,000. You may accept this offer individually without regard to the actions of any other Plaintiffs' decisions.
>
> Unlike the offer we attempted to convey to each of you last week, this offer is not contingent on all other Plaintiffs accepting this offer. We have significant reason to believe that many of the other Plaintiffs wish they had never started down this ill-fated road with their employer which will, at trial if it comes to that, pit fellow Cleco employees against each other in a highly contentious and confrontational manner. In addition, if we are forced to continue to trial, you will likely face significantly escalating costs which will have to be funded and large amounts of time away from work which you will need to provide for. This will be the final settlement offer that the Defendant will make to you in this case. If this offer is not accepted, we will be moving forward with a vigorous defense of your individual case, which will now be tried as a separate case and it will not be settled.
>
> As I hope came across in my employee meetings, I am more interested in moving the company forward and not dwelling on claims tied to old issues and perceptions which also may not have a basis in facts. Therefore, I wish to make this offer available for you to consider with your family over the holiday weekend. The offer is open until close of business (5:00 PM) central standard time on December 27, 2011. Payment in full can be arranged immediately upon notice of acceptance and signing a settlement agreement.

Plaintiffs' Amended Complaint in this action contained several exhibits, but this letter – which is quoted or referenced extensively throughout the Amended Complaint – was not attached. It was, however, filed by Plaintiffs in 09-cv-2103, so the court will take judicial notice of its contents.

Mr. Williamson signed each of the letters. An attorney for Cleco mailed the letters to Plaintiffs' attorney for "onward transmission to Plaintiffs." Amended Complaint, ¶ 19. The contents of the letters were directly written by Mr. Williamson and contain no statements

from any attorney acting on behalf of Cleco or Williamson. ¶¶ 20-21. All earlier communications between Plaintiffs and Defendants had been made between the attorneys in the cases. ¶ 22. Copies of the letters were delivered to members of the Cleco executive management team and heads of various departments. ¶ 23.

Plaintiffs allege that Mr. Williamson had previously conveyed "essentially" the same message through his lawyers a week earlier. ¶ 34. They assert that he was not happy with the response to his first message, so he chose to write the letter and address it to the individual employees as a way of intimidating them. ¶ 35. Plaintiffs also point to an internal Cleco email, generated a few weeks before the settlement letter, that mentioned Mr. Williamson's plan to reduce outside legal expenditures by approximately 60% in the next year. Plaintiffs allege that Mr. Williamson believed that Plaintiffs and their lawsuits were an impediment to his strategic legal goals for Cleco. ¶¶ 30-31.

Plaintiffs, who have been suing their employer since 2009, allege that after this 2011 settlement offer they are "now afraid that their careers ... have been relegated to employment purgatory because they filed employment discrimination lawsuits." ¶ 90. Three Plaintiffs who no longer even work for Cleco allege that they have been "plunged into a state of emotional turmoil since receiving [the letter] and they have not been able to sleep comfortably and have suffered from persistent headache, chest pain, elevated blood pressure and skin rash, amongst others." ¶ 118. Plaintiffs allege that, after receiving the letter, they were in a "state of panic and were thrown into a state of emotional turmoil" that required they begin "seeking medical and psychiatric treatment." ¶ 132-33.

**Retaliation**

Plaintiffs rely on 42 U.S.C. § 1981 rather than Title VII, but the elements of the claim are the same. A prima facie case of retaliation under Section 1981 requires a showing that: (1) the employee engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 319 (5th Cir. 2004). The Supreme Court, in interpreting Title VII's anti-retaliation statute, stated that it "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington Northern & Sante Fe Railway Co. v. White, 126 S.Ct. 2405 (2006). That requires a materially adverse action, meaning one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id.

Plaintiffs acknowledge in paragraph 137 of their Amended Complaint that the contents of the settlement letter, if written and signed by an attorney acting for Cleco, would not be impermissible unless delivered directly to a plaintiff-employee that the attorney knew was represented by counsel. In that case the communication would run afoul of rules of professional conduct that prevent attorneys from communicating directly with a represented party. But that is not what happened. The letters were delivered to counsel for Plaintiffs.

Plaintiffs argue that what makes this letter actionable retaliation is that it was (1) written by Mr. Williamson rather than an attorney for Cleco and (2) was copied to other department heads. But Plaintiffs have not cited any authority for the propositions that a company sued for employment discrimination may not negotiate except through its counsel

or that company management may not be kept informed of events in the litigation. On the other hand, Defendants point to authority that a settlement offer "ordinarily cannot be" retaliation. Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1260 n.8 (11th Cir. 2012). This has been recognized in a setting where the letter came from a management official rather than an attorney. See Penny v. Winthrop-University Hosp., 883 F. Supp. 839 (E.D. NY 1995) (hospital president sent nurse a letter to convert a discharge to suspension without pay and reassignment, in exchange for a waiver and release of pending discrimination claims; letter was not an adverse employment action); and Kratzer v. Collins, 295 F. Supp. 2d 1005, 1017 (N. D. Iowa 2003) (offer of training and testing for a promoted position in exchange for dismissal of civil rights suit was not an adverse employment action merely because the proposed terms were not satisfactory to the employee).

Plaintiffs allege that they engaged in protected activity, the filing of employment discrimination suits, but that does not mean their employer is thereafter prevented from any communication or action with respect to them. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Burlington Northern, 126 S.Ct. at 2415. Personality conflicts or "snubbing" by supervisors and co-workers, for example, have been held not actionable. Id. Even a more significant action such as a schedule change, depending on the context, may not merit relief. Id.

To make out an actionable claim of retaliation, Plaintiffs must show that a *reasonable* employee would have found the settlement letter materially adverse. The standard is an

objective one. Thus the alleged retaliatory act must have dissuaded a reasonable worker from making or supporting a charge of discrimination. Burlington Northern, 126 S.Ct. at 2415. An example of the application of the standard can be found in the recently decided Harrison v. Corrections Corporation of America, 476 Fed. Appx. 40, 44 (5th Cir. 2012). The employee alleged that he was retaliated against by being reprimanded for actions for which other employees were not reprimanded, and he was transferred from his maintenance department to a detention officer position at the same salary. The Fifth Circuit concluded that a reasonable employee would not find either of those actions materially adverse, thus defeating a retaliation claim.

The letter sent in this case was not a reprimand, did not affect the terms or conditions of any employee's employment or work duties, and is not alleged to have changed any aspect of any Plaintiff's job. It was simply a settlement offer that Plaintiffs find objectionable because it was penned by the company president rather than a company lawyer. That difference is not enough for any objectively reasonable person to have been dissuaded from making or supporting a charge of discrimination, such as the discrimination suits that these Plaintiffs continue to press before this court. Only an unreasonably sensitive employee could have received the offer of a monetary settlement and, as a result, been dissuaded to continue pressing the suit for which the money was offered. Plaintiffs simply have not alleged facts that, if true, would give rise to a retaliation claim under applicable law.

**Hostile Work Environment**

Plaintiffs state at page 15 of their Memorandum (Doc. 11) that they do not assert a claim for retaliatory hostile work environment. They do, however, assert a claim of hostile work environment. The elements of hostile work environment claim under Section 1981 are the same as under Title VII. <u>Barkley v. Singing River Elec. Power Ass'n</u>, 433 F. App'x 254, 257 n. 7 (5th Cir. 2011). Such an environment exists when the work place is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. <u>Stewart v. Miss. Transp. Comm'n</u>, 586 F.3d 321, 328 (5th Cir. 2009). Looking at the totality of the circumstances, the court considers the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it reasonably interferes with an employee's work performance. <u>Harvill v. Westward Communications, LLC</u>, 433 F.3d 428, 434 (5th Cir. 2005). The work environment must be both objectively offensive, meaning a reasonable person would find it hostile and abusive, and subjectively offensive, meaning the victim perceived it to be so. <u>Shepherd v. Comptroller of Pub. Accounts</u>, 168 F.3d 871, 874 (5th Cir. 1999). Employees who are subjected to insults, epithets, and other workplace degradations often see their claims rejected under this demanding standard.

Plaintiffs allege that they sued their employer for race discrimination. The employer and its president are accused of responding by offering to pay the employees several thousand dollars each to resolve their claims, an offer that was communicated by the letter quoted above. Plaintiffs apparently did not accept the offer. There is absolutely nothing in

those facts that could possibly give rise to a race-based hostile work environment claim under governing law. Settlement discussions and offers are to be encouraged, and there was nothing in this offer that could *objectively* constitute anything offensive, threatening, humiliating, or that would otherwise possibly give rise to a hostile work environment.

**Intentional Infliction of Emotional Distress**

Plaintiffs' Amended Complaint cites a number of federal and state law theories. Their memorandum, however, fully briefs only the retaliation and hostile work environment claims discussed above. The memorandum mentions but does not defend a claim for intentional infliction of emotional distress under Louisiana law.

To recover under such a claim, a plaintiff must prove (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that such distress would be certain or substantially certain to result from his conduct. White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991). The conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. Ordinary employment disputes, even those involving discrimination and sexual harassment, will rise to this level only in the most unusual of cases. Nicholas v. Allstate Ins. Co., 765 So.2d 1017, 1027 (La.2000).

The settlement letter sent by the company president in this case cannot conceivably meet this standard. Any doubt may be resolved by comparing the facts alleged in this case

to those several cases collected in <u>Nicholas</u> in which various demotions, cursings, transfers, harassments, and intrusions into personal lives were found lacking. Plaintiffs have not alleged facts that would give rise to an actionable claim under this final theory.

Accordingly,

**IT IS RECOMMENDED** that the Defendants' **Motion to Dismiss (Doc. 4)** be **granted** and that Plaintiffs' complaint be **dismissed with prejudice** for failure to state a claim on which relief may be granted.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 19th day of November, 2012.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE